TRUSTEES OF THE VILLAGE OF GENEVA *v.* BRUSH ELECTRIC CO. OF CLEVELAND.

(*Supreme Court, General Term, Fifth Department.*   December 30, 1889.)

1. MUNICIPAL CORPORATIONS—DEFECTIVE STREETS.
    The trustees of a village contracted with an electric light company for the purpose of lighting the streets.   The trustees were to locate the lamps, and the company was to have the use of the streets for setting the necessary poles, doing no unnecessary damage, and not obstructing travel.   A light was erected on a street at a place designated by the trustees, the pole being set just outside the curb, it being impracticable to place it on the inside.   Defendant, another company, assumed the obligations and took the place of the company mentioned, and made a new contract, which provided that the lamps were to be kept as then located.   It did not appear that defendant knew that the former company was responsible for setting the pole outside the curb.   *Held,* that the trustees conclusively appeared to have consented to the maintenance of the pole at the place mentioned.

2. SAME.
    The trustees, having consented to the maintenance of the pole, cannot recover of defendant the amount they were compelled to pay to one who was injured by the obstruction.   Following 3 N. Y. Supp. 595.

Exceptions from circuit court, Ontario county.

Action by the trustees of the village of Geneva against the Brush Electric Light Company of Cleveland, to recover the amount of a judgment paid by plaintiff, recovered against plaintiff by a person injured by an electric light pole placed on the streets of said village.   There was a verdict directed for defendant, and exceptions thereto were ordered to be heard at the general term in the first instance.   A former opinion is reported in 3 N. Y. Supp. 595.

Argued before BARKER, P. J., and DWIGHT and MACOMBER, JJ.

*Mason & Rose,* for plaintiff.   *William E. Cushing,* for defendant.

MACOMBER, J.   This action was brought to recover the amount of a judgment which one Malony had previously obtained against the plaintiff for the maintenance of an electric light pole in Exchange street, opposite Jackson street, in the village of Geneva, which was an obstruction to the public travel, and which caused personal injuries to him.   The village authorities defended

the Malony action, and in their answer alleged that, for the purpose of lighting the streets of the village under the contract then existing between themselves and this defendant, "it was necessary and proper that the poles should be erected in said streets, and for that purpose this defendant guarantied to said companies the right and privilege of setting poles in said streets, and the use of the streets therefor; said company to do no unnecessary damage, and not to obstruct travel therein." They further alleged in that answer, "that the setting and maintaining of said pole was not the act of themselves, but of the said electric light companies." Being defeated in that action, they seek remuneration by this action over against the company which was maintaining the pole at the time the injuries to Malony were inflicted, which was the 10th day of June, 1885.

In order to ascertain whether or not any legal liability attaches to the defendant upon this claim, it is necessary to recur to the evidence showing how this electric pole came to be located within the traveled part of the street, about nine feet from the curb. It appears that early in the spring of 1884 the Brush-Swan Electric Company of New England (not this defendant) put up, with the permission and license of the village, what was called an "experimental circuit" for lighting a part of the streets of the village, but such circuit did not include the place where the pole was located which inflicted the injuries upon Malony. On the 28th day of May, 1884, the village of Geneva and that corporation entered into a contract for the lighting of Geneva with electric lights. Lamps were to be located by the trustees of the village, and the company was to have the use of the streets for the purpose of setting necessary poles for carrying into effect the contract, doing no unnecessary damage, and not to obstruct the travel on such streets. For the compensation therein prescribed the Brush-Swan Electric Company of New England undertook to light the streets in the manner mentioned, and also to light with the electric lights the village buildings, comprising the trustee room, the police court-room, the room back of the trustee room, and two houses for fire steamers, the stables and lockup. Two days after making this agreement the trustees of the village went around with the manager of that electric light company for the purpose of locating the lights, one of which was to be placed at the intersection of Exchange and Jackson streets. Mr. Avery, the manager, testified that the act of the trustees in locating this light was simply by marking the place upon the map. A few days thereafter, the Brush-Swan Company set a pole on the east side of Exchange street, opposite the intersection of Jackson street, at a distance from the curb already mentioned. On the 5th day of December, 1884, this defendant, the Brush Electric Company of Cleveland, Ohio, by written agreement took the place of the Brush-Swan Company, and assumed all of its obligations to the plaintiff, and maintained and used the pole in question until after the accident to Malony. But a new contract had in the mean time, and on the 2d day of June, 1885, been made between this defendant and the trustees of the village. By this contract there were to be 37 electric lamps maintained, each of the nominal 2,000-candle power, and, further, "lamps to be about thirty-five. feet high, and to be as now located." It appears that, when this defendant succeeded the Brush-Swan Company, the pole in question had been an obstruction to the public travel for a period of one year. There is no evidence to show that this defendant had any knowledge of the fact that Avery, the manager of the Brush-Swan Company, was responsible for placing the pole within the curb lines of the street, so as to endanger public travel. This clause, that the lamps should be maintained in the places where the defendant found them to be located, (for that is the meaning of the phrase in the agreement,) as it seems to us, is conclusive evidence that the village trustees consented to, even if they did not require, this particular pole to remain where this defendant found it. Under these circumstances, the request of the plaintiff's counsel to go to the jury on

the question of consent by them of the location of the pole was properly denied by the learned trial judge, for the reason that such consent appeared conclusively established by the written agreement of June 2, 1885, the construction of which was for the court and not for the jury.

Counsel for the plaintiff upon this appeal argue that the agreement related only to the location of lamps, and not to the places where the poles were set up. While Mr. Avery testified, as is urged by counsel, that he was responsible for placing the pole, yet he also testified that "the difficulties in the way of setting this pole inside of the curb originally were trimming the trees, and getting the privilege of putting it where it is put now." The pole had been removed at the time of the trial. He continues: "The trees on that side were quite large, and some of the limbs large." "If the limbs came in contact with the suspended wires,—large limbs and hard limbs,—it would have the effect of making what we term 'cut out,'—they would put out the lights. It was impracticable to run a pole up through the limbs of a tree where we came in contact with big limbs. At the corner of these streets there were limbs of that character. I set this pole out to get rid of these limbs. * * * I could not have changed the location of that pole so as to get up inside of the curb, or inside of the gutter, with those trees standing there, without changing the location of the light. I would have been compelled to mutilate the trees considerably, or change the location of the light very materially. * * * I put it there for the purpose of complying with the direction given me by the board of trustees as to the location of the light." It seems, therefore, that the village authorities acquiesced in the well-known obstruction of this street on account of the difficulties encountered in the way of erecting the pole. That they knew the fact that the pole was so located, admits of no doubt. When, therefore, while chargeable with knowledge of this fact, they entered into a contract with this defendant by which this, with other poles, was to remain as then located, they not only consented to, but co-operated with, this defendant in a palpable obstruction to the highway, which was a nuisance. To say that they, by this contract, were not liable for the location of the pole, but only for the location of the light on the pole, does not, it seems to us, accord with the manifest meaning of the language as there used, and is a play upon words to the sacrifice of the idea.

When this case was before this court on the former appeal, (3 N. Y. Supp. 595,) it was held, in an opinion which it is not necessary here to repeat, that a finding by the trial court, a jury having been waived, that the plaintiffs consented to the maintenance of this pole, precluded them from maintaining an action over. That opinion also discusses and determines the rule applicable to a recovery over in favor of one who has been compelled to respond to the party injured, as well as to other questions argued by counsel and not herein considered. The evidence on this appeal is precisely the same as that which was before the court upon a prior appeal, save a few unimportant and immaterial matters, which have been properly left out of the present case. As was there said, the evidence does not warrant a recovery by the plaintiffs in this action, for the reason that the pole in question was maintained by the concurrence and consent of the plaintiffs. It follows that motion for a new trial should be denied, and that judgment should be directed for the defendant upon the verdict, with costs. All concur.